272 P.2d 342

MULL

v.

ROOSEVELT IRR. DIST.

No. 5856.

Supreme Court of Arizona.

June 28, 1954.

Harry W. Piper, and Marshall W. Haislip, Phoenix, for appellant.

Snell & Wilmer, Phoenix, for appellee.

WINDES, Justice.

Myrna Lee Mull, a minor, by her guardian ad litem, filed a complaint against Roosevelt Irrigation District, a corporation, seeking damages for personal injuries claimed to be the result of defendant's negligence. On motion of defendant judgment was rendered dismissing the complaint for the reason that it failed to state facts sufficient to constitute a claim for relief. Plaintiff on bringing the matter to this court insists the facts alleged entitle her to remain in court for trial. Such is the sole question to be determined.

The complaint is extremely verbose but in substance alleges: That defendant for many years had been engaged in pumping irrigation water by means of electrical power and conveying it to landowners for irrigation purposes; that defendant maintains for its business purposes a road running along its canal which road was between the canal and a well and pump operated by the defendant. Under the road was a culvert into which extended a pipe

leading from the well and pump through which the water as pumped was conveyed to a spillbox. It is further alleged defendant's road intersected public highways and numerous persons for a long period of time prior to the accident to defendant's knowledge or under such circumstances as defendant should have had knowledge, played in the spillbox and culvert. It is stated that while plaintiff was thus using these facilities for recreational purposes, she waded through the culvert and was sitting on the end of the pipe from which the water was being ejected, when the electrical power was cut off or failed with the result that the water in the pipe reversed its flow, sucked plaintiff into the pipe and caused her severe injuries. The complaint alleges defendant knew it would be dangerous to one sitting on the pipe in the event of power failure and knew others would be unaware of such danger and that notwithstanding this, the defendant gave no warning or in any way provided protection against such danger.

It will be observed there is no claim of any act of misconduct on the part of defendant except that it failed to provide protection against such potential danger by warning or otherwise, having knowledge that people were accustomed to use its facilities for recreational purposes and that in the event of power failure a condition would be created endangering one who might be sitting on the pipe.

■ Fairly interpreted, the facts alleged would create the relationship of licensor and gratuitous licensee. Consequently, the complaint attempts to state a cause of action for negligence upon the ground that the defendant failed to protect the gratuitous licensee against a hidden peril or trap known to the defendant and unknown to the plaintiff.

■ Generally, there are two bases of liability of a possessor of land for personal injury sustained thereon by a bare or gratuitous licensee: For an active act of negligence causing injury when the owner knows or is charged with knowledge of the presence of the licensee, or when the possessor without warning or other protective measures creates or permits the existence of hidden perils commonly called pitfalls or traps of which the licensee has no knowledge or cannot be charged with knowledge.

There is no charge in the complaint that the defendant committed any active negligent act so we are not concerned with this problem. An attempt is made to charge the defendant with knowingly having permitted the existence of a hidden danger or pitfall into which the plaintiff was trapped. We are called upon, therefore, to determine the extent of the obligation of a licensor to warn or otherwise protect the licensee from hidden danger incident to the otherwise careful operation of a plant of this character.

■ The general rule is that one who goes upon another's property as a gratuitous licensee for his own benefit and pleas-

ure must take it in the condition he finds it and must assume all risks incidental to such condition and the business conducted thereon. The owner may make any lawful use in the careful operation of his business even though such use or operation is pregnant with incidental dangers. Under these conditions the owner is under no obligation to protect the licensee against such danger. 65 C.J.S., Negligence, §§ 35d and 35e. The owner or occupier is not obliged to keep his premises in a safe condition for the benefit of licensees nor is there any absolute obligation to warn them of hidden dangers. 38 Am.Jur., Negligence, §§ 105 and 106.

This court has on two occasions defined the obligation of the owner to the licensee with respect to the condition and use of his premises as that he must not wantonly or willfully cause him harm nor knowingly permit him innocently to contact a hidden peril. Southwest Cotton Co. v. Pope, 25 Ariz. 364, 218 P. 152; Sanders v. Brown, 73 Ariz. 116, 238 P.2d 941. There being no claim of wanton or willful harm by active negligence, our only problem is whether this defendant under the facts alleged is entitled to protection under the hidden peril doctrine. This depends upon whether it is the kind of peril of which warning should be given or other protective device provided; whether it comes under the category of a pitfall or trap, or whether it is such a hazard as the licensee must accept for the gratuitous privileges extended.

■ There are numerous cases upon this subject but running through the history of the principle and the decisions based thereon imposing liability under such conditions is generally the idea of deceit or camouflage. W. H. Griffith, "Licensors and 'Traps' ", 41 The Law Quarterly Review, page 255. It is an act or omission of the defendant which gives a dangerous instrumentality or condition an innocent appearance to the unwary licensee. It must be of defendant's making or his maintenance thereof after knowledge of its existence. Johnston v. Pennsylvania R. Co., 135 Pa. Super. 45, 4 A.2d 539; Ford v. United States, 10 Cir., 200 F.2d 272. Failure to provide protection against injury from its existence must be the equivalent of a willful and wanton act.

■ The alleged peril in the case at bar is a reversal of water flow in the event and only in the event of a power failure. It is the ordinary reaction from the normal and careful operation of the pump. It is a natural hazard incident to the lawful activity of pumping irrigating water. There was no trap or pitfall created or maintained by the defendant within the legal meaning of those terms. Failure to warn thereof was not willful and wanton conduct. The peril was one falling in the category of those that a gratuitous licensee must assume and there was no obligation imposed upon the defendant to give warning or provide protection. The rule requiring an owner to refrain

from knowingly permitting a licensee to run upon a hidden peril has no application.

An extension of this rule to embrace such dangers as alleged in the complaint would be unwarranted and unreasonable. Defendant's behavior constituted no breach of duty to the plaintiff. To extend the hidden pitfall theory of liability to such a danger cannot be legally justified. The tendency would be to unduly hamper, hinder and harass the efficient pursuit of essential activities. It has been held in some jurisdictions that the hidden peril rule cannot be invoked unless the trap or pitfall was the result of defendant's active negligence. Elliman v. Gombar, 86 Ohio App. 352, 91 N.E.2d 801. Many jurisdictions hold no liability for "passive" as distinguished from "active" negligence. Annotated 156 A.L.R. 1236; 38 Am.Jur.Negligence, § 104. It has even been held there is no liability when the normal operation of a plant creates in fact what may well be termed a camouflaged pitfall. Kohler v. W. J. Jennison Co., 128 Minn. 133, 150 N.W. 235; Cook v. Southern Ry. Co., 53 Ga.App. 723, 187 S.E. 274.

There is considerable confusion and some conflict in the authorities from the various jurisdictions. It is unnecessary for us to attempt a reconciliation of them but they all illustrate the reluctance of the courts to extend protection to intermeddling licensees and thereby interfere with an owner's lawful use of his property. We have not been cited to nor have we been able to find any decision that goes so far as plaintiff attempts. The right to protection for licensees under the situation presented is quite limited. The extension of the rule in favor of this plaintiff would place her rights on a par with those on the premises by legal right rather than by sufferance. The law does not grant such favors to a bare licensee when to do so clashes with the right of owners to carefully use their property in pursuance of a legitimate undertaking.

The controlling principle under the facts alleged is that there was no obligation on the part of defendant to provide plaintiff, a gratuitous licensee, with a safe swimming pool or recreational area, and hence no obligation to warn her of the possible failure of power and the resulting effect.

Judgment affirmed.

PHELPS, C. J., and STANFORD, UDALL and LA PRADE, JJ., concur.