DELL, Judge,
dissenting.
This appeal arises out of a summary final judgment entered in favor of appellee homeowners in a glass sliding door accident case. Appellant brought suit as mother and next friend of Brandi Fitzgerald, a minor.
Brandi Fitzgerald, a seven-year-old child, suffered personal injuries when she ran into a sliding glass door at appellees’ residence. The glass sliding door had no decals or other markings and was not made of laminated safety glass, wired glass or tempered glass.
*710 Appellant alleged in her complaint that appellees had a duty to use ordinary care to maintain their premises in a reasonably safe condition and that they breached that duty by failing to give timely notice of latent or concealed perils, of which they knew or should have known. Appellant specifically alleged that appellees breached their duty of reasonable care by failing to place decals or other markings on the glass door. The trial court found as a matter of law that appellees had no duty'to investigate and determine the type of glass used in the door and they had no duty to place decals or other markings on the door. I disagree and dissent because material questions of fact exist as to appellees’ breach of their duties of care.
The briefs place great emphasis on whether the glass sliding door was an inherently dangerous instrumentality. Apparently this emphasis results from the trial court’s determination that appellees' duty to place decals or other markings on the door did not exist unless appellant proved that the door was inherently dangerous and that appellees knew or should have known of the condition. Appellees cite only Watts v. Bacon & Van Buskirk Glass Co., 20 Ill.App.2d 164, 155 N.E.2d 333 aff'd., 18 Ill.2d 226, 163 N.E.2d 425 (1959), to support their argument that a glass sliding door is not an inherently dangerous instrumentality. However, the court in Dixon v. Allstate Insurance Co., 362 So.2d 1368 (La.1978), reached a different conclusion based on statistical data and common sense:
Care should increase with the magnitude of the harm which might befall a victim. A large sheet of thin, clean, transparent, untempered, not-laminated glass presents such an obvious risk of serious injury that it must be considered a hazardous substance. The location of such glass panels, blocking entry and exit through openings in houses designed as passageways multiply the opportunities for serious accidents.
The very least the owner of a building must do is warn a visitor when such a transparent door is closed. The warning is so simple and inexpensive, especially when compared with the risk of harm, that its absence ought not be excused. A decal, decorative tape, paint, or a simple strip of masking tape might be sufficient to prevent serious injury. The homeowner, in the case before us, welcomed the four teen-agers, including her grandson, to swim, cook out and play in the very area where the hazard was greatest, (footnote omitted)
Id. at 1369-70.
In a footnote, the Dixon court pointed out:
The National Safety Council reported in 1967 that accidents such as these occurred in 40,000 American homes annually. Safety Newsletter, National Safety Council, Chicago, Illinois, Jury, 1967. See also Annot., 41 A.L.R.3d 176 showing the vast number of eases in other jurisdictions involving collisions with glass doors and panels.
Here, appellant presented expert testimony that the plate glass door was inherently dangerous and that appellees could have discovered the type of glass by consulting a glass company or by looking at the manufacturer’s markings on the glass. In my opinion, the jury should have been allowed to decide whether the glass used in the door constituted an inherently dangerous condition on the premises and the related question of appellees’ duty to investigate the type of glass used in the door.
A more compelling reason for reversal arises out of the question whether appel-lees, notwithstanding the type of glass used in the door, breached their duty to exercise reasonable care when they failed to place decals or other marking on the glass door. In Shannon v. Butler Homes, Inc., 102 Ariz. 312, 428 P.2d 990 (1967), the Arizona Supreme Court concluded that a jury should answer the question of whether a glass door creates a trap. In Shannon, an eight-year-old child walked through an unmarked glass panel because she thought it was an open space. The court stated:
In the present case, appellant pleaded that the glass door because of its deceptive illusion coupled with lighting conditions and the absence of signs and mark *711 ings created a trap. We cannot say from the allegations of the complaint and denials of the answer that the glass door was not a hidden peril within the meaning of Sanders v. Brown [73 Ariz. 116, 238 P.2d 941 (1951)], supra.
Id. 428 P.2d at 994-95.
The court in Kemline v. Simonds, 231 Cal.App.2d 165, 41 Cal.Rptr. 653 (Cal. 1st DCA 1964), reached a similar result. In Kemline, an eight-year-old plaintiff and her parents were social guests in the home of the defendant. The minor plaintiff stated, “I didn’t realize that it was closed until I hit it, hit the glass door and ran right through it.” The court held:
We think that the trier of fact reasonably could find that simple precautions, such as colored tape, metal strips or other markings on or across the glass panel would have remedied or at least substantially reduced the danger of such condition at small cost to defendants.
In summary we hold that the evidence is sufficient to sustain a finding that defendants were guilty of negligence and subject to liability under the provisions of section 339 of the Restatement, (footnotes omitted).
Id. 41 Cal.Rptr. at 656.
While the absence of shatterproof glass obviously intensified the minor child’s injuries in the case sub judice, the legal cause of the accident can be directly related to the failure to have any markings on the door. In Giordano v. Mariano, 112 N.J. Super. 311, 271 A.2d 20 (A.D.1970), the. court concluded that a plaintiff could establish the duty to place markings on a glass door without the benefit of expert testimony:
The absence of any expert testimony on behalf of plaintiffs is not crucial. Although “it is obvious that an expert need not be called to inform a jury as to the nature of a condition caused by a missing brick in the top step of a porch,” Berger [v. Shapiro ], supra, 30 N.J. [89] at 102, 152 A.2d [20] at 27 [ (1959) ], it is equally obvious that an expert need not be called to inform a jury that a transparent unmarked glass door, open and later closed, adjacent to an unlighted patio area on a “pitch black night,” may constitute an unreasonable risk of harm to an II-V2-year-old boy. We do not perceive that plaintiffs’ case is grounded upon substandard or inherently dangerous construction of the glass door. Rather, the issue is whether the door in the context of the attendant circumstances created a dangerous condition to infant plaintiff. The questions of foreseeability and reasonableness are ordinarily matters for and easily comprehended by a jury.
Id. 271 A.2d at 23.
Here, appellant presented a much stronger case than in Giordano because the record does contain expert testimony concerning the need for such markings.
Finally, the law, even before the advent of comparative negligence, clearly established that a different standard of care is applied to a child in a glass sliding door accident. Canner v. Blank, 152 So.2d 193 (Fla. 3d DCA 1963), reversed a summary judgment in favor of the defendant where a thirteen-year-old girl, while accompanying her parents on an inspection tour of a model home, suffered serious personal injuries when she walked into a three-panel sliding glass door bearing no markings or decals. See also Peppermint Twist, Inc. v. Wright, 169 So.2d 330 (Fla. 3d DCA 1964). Judge Pearson appropriately pointed out in McCain v. Bankers Life and Casualty Co., 110 So.2d 718 (Fla. 3d DCA), cert. denied, 114 So.2d 3 (Fla.1959):
It is apparent that the only real basis for denial of liability in a glass door ease is that the plaintiff ought to have observed the door or window. It was established without issue that the door in the instant case consisted of two sliding glass panels _ The glass was transparent without any markings on its surface. Taking as established that under normal conditions the courts hold that a plaintiff should see an ordinary glass door, does it follow that a minor should have seen this door?
Id. at 721.
In my opinion, material questions of fact exist which should not have been decided *712 as a matter of law and which should have gone to the jury. Therefore, I respectfully dissent from the majority’s affirmance of the trial court’s summary judgment in favor of appellees.